## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. JOHN DOE, Individually, and on behalf of all others similarly situated <br> Plaintiff, <br> v. <br> 1. INTEGRIS HEALTH, INC., <br><br> Defendant. | No.:  CIV-23-728-HE <br><br> (Removal from: the District Court of Oklahoma County, State of Oklahoma, Case No. CJ-2023-3801) <br><br> Jury Trial Demanded. |

### NOTICE OF REMOVAL

Defendant INTEGRIS Health, Inc. ("Integris Health") hereby removes this putative class action to federal court pursuant to the federal officer removal statute, codified at 28 U.S.C. § 1442(a)(1). In support, Integris Health provides the following "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014).

### NATURE OF THE CASE

1.      Over the past two decades, the federal government has engaged in an extensive effort to establish a nationwide health information technology infrastructure. This case is one of numerous website privacy cases that have been filed against health care providers throughout the nation, including several cases across federal courts. *See Naugle v. Duke University Health System, Inc.,* Case No. 1:22-cv-00727 (M.D.N.C. Sept. 9, 2022); *Simon v. New York-Presbyterian Healthcare System, Inc. et al.*, Case No. 23-3428 (S.D.N.Y. filed Apr. 24, 2023); *Kurowski v. Rush System for Health*, --- F. Supp. 3d ---, 2023 WL 2349606 (N.D. Ill. 2023); *Cousin, et al. v. Sharp Healthcare*, --- F. Supp. 3d ---, 2023 WL

448441 (S.D. Cal. 2022).

2.      Named plaintiff John Doe filed his putative class action complaint against Integris Health in the District Court of Oklahoma County, State of Oklahoma, Case No. CJ-2023-3801 on July 10, 2023 (the "Complaint"). *See* Ex. 1, State Court Dkt., Compl., filed July 10, 2023.[1] Doe served Integris Health with a copy of the Complaint on July 17, 2023. *Id.*; Ex. 2.

3.      The underlying factual basis for Doe's Complaint is that Integris Health allegedly violated Oklahoma law by embedding a third-party source code—called the Meta Pixel—onto Integris Health's publicly available websites, referred to in the Complaint as the "Website" and "Online Platforms." Ex. 1 at ¶¶ 5-7, 9-10.

4.      Doe further alleges that Integris Health violated Oklahoma law by installing other tracking technology—such as the Google Tag Manager, Google Analytics, Microsoft Universal Event Tracking, LinkedIn, Bidtellect, StackAdapt, Reddit Ads, MediaMath, Trade Desk, and DoubleClick—on its website. *Id.* at ¶ 18.

5.      Doe alleges that these tracking tools, including the Meta Pixel, are "bits of code" that collect data on users as they navigate the Website and Online Platforms, including "any buttons clicked by site visitors, the labels [*sic*] those buttons and any pages visited as a result of the button clicks." *Id.* at ¶¶ 42, 48.

6.      The Website and Online Platforms identified by plaintiff include Integris Health's

---

[1] In accordance with the Court's local rules, Integris Health attaches the following Exhibits to its Notice of Removal: Summons from Oklahoma County – Exhibit 2; Motion to Plead Under Pseudonym – Exhibit 3; Order Granting Motion to Plead Under Pseudonym – Exhibit 4; State Court Docket – Exhibit 5.

patient portal, identified in the Complaint as part of Integris Health's "various web-based tools and services." *Id.* at ¶¶ 5, 36. The link to the Integris Health Patient Portal is https://www.integrisandme.com/.

7.      Doe alleges that to "increase the success of its advertising and marketing and sales," Integris Health "purposefully installed the Meta Pixel and trackers" on its Website and Online Platforms. Ex. 1 at ¶ 38. "In doing so, Defendant surreptitiously shared patients' private and protected communications, including those containing Plaintiff's and Class Members' Private Information, with Facebook and other third parties." *Id.*

8.      Plaintiff alleges that he is an Integris Health patient and that he accessed the Website and Online Platforms to search for contact information and addresses for his doctors for "gastroenterology, cardiology, sleep apnea, asthma, and emergency care." *Id*. at ¶¶ 85-90.

9.      Based on these facts, Doe's Complaint contains six counts against Integris Health under Oklahoma law: common law claims for (1) negligence (*Id.* at ¶¶ 149-156), (2) invasion of privacy - intrusion upon seclusion (*Id*. at ¶¶ 157-166), (3) breach of implied contract (*Id.* at ¶¶ 167-177), (4) unjust enrichment (*Id.* at ¶¶ 178-185), and (5) breach of fiduciary duty (*Id.* at ¶¶ 186-192). Plaintiff's sixth claim is brought under Oklahoma law for (6) an alleged violation of the Oklahoma Consumer Protection Act (*Id.* at ¶¶ 193-202).

**GROUNDS FOR REMOVAL**

10.      Integris Health seeks to removes Doe's Complaint under the federal officer removal statute codified at 28 U.S.C. §1442(a).

11.      Under 28 U.S.C. § 1442(a)(1), a civil action that is "against or directed to" any of the following may be removed to federal court "(1) the United States or any agency thereof

or any officer (*or any person acting under that officer*) of the United States or of any agency therefore, in an office or individual capacity, *for or relating to any act under color of such office . . . .*" *Id.* § 1442(a)(1) (emphasis added).

12.　　To remove under the statute, Integris Health must show that as a private "person" (1) it acted under the direction of a federal officer; (2) the claim has a connection or association with government-directed conduct; and (3) it has a colorable federal defense to the claims. 28 U.S.C. § 1442(a)(1); *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020); *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017); *see also Greene v. Citigroup, Inc.*, No. 99-1030, 2000 WL 647190, at *2 (10th Cir. May 19, 2000) (unpublished) (applying a similar three-part test for federal officer removal jurisdiction); *see also, Hazen v. S. Hills Nat. Bank of Tulsa*, 414 F.2d 778, 779 (10th Cir. 1969) (the court, citing *Willingham v. Morgan*, 395 U.S. 402, 405 (1969), found that it was sufficient for one seeking removal under § 1442(a)(1) to show that the defendant's relationship with the plaintiff arose solely due to the defendant fulfilling his official duties as appointed by an agency of the United States federal government).

13.　　The United States Supreme Court has directed that the federal officer removal statute is to be broadly construed, and defendants can remove under this statute when they are acting under color of federal office. *Colorado v. Symes*, 286 U.S. 510, 517 (1932); *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981).

## I.　　Integris Health is a "Person" Within the Meaning of the Statute.

14.　　Doe alleges Integris Health is "a non-profit corporation organized and existing

under the laws of the State of Oklahoma with its principal place of business at 3300 NW

Expressway, Oklahoma City, OK 73112 in Oklahoma County." Ex. 1 at ¶ 30.

15.      While the statute is silent as to the definition of a "person," organizations, corporate

defendants, and government entities have routinely removed under this provision and been

deemed a "person" under the statute. *See, e.g., Bd. of Cnty. Commissioners of Boulder*

*Cnty. v. Suncor Energy (U.S.A.) Inc.,* 25 F.4th 1238, 1251 (10th Cir. 2022), *cert. denied*,

143 S. Ct. (2023) (citing *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135-36 (2d Cir. 2008)

for the proposition that "[c]orporations are persons under § 1442(a)"). Utilizing this logic,

Integris Health is a person under the federal officer removal statute.

## II.      Integris Health Acted Under Color of Federal Law Under 28 U.S.C. § 1442(a)(1).

16.      President George W. Bush first established "the position of National Health

Information Technology Coordinator in 2004, "to provide leadership for the development

and nationwide implementation of an interoperable information technology infrastructure

to improve the quality and efficiency of healthcare." *See* Exec. Order No. 13335, at pg. 702

(Apr. 27, 2004), *Incentives for the Use of Health Information Technology and Establishing*

*the Position of the National Health Information Technology Coordinator*, available at

https://www.presidency.ucsb.edu/documents/executive-order-13335-incentives-for-the-

use-health-information-technology-and. The purpose of the Executive Order was to spark

a "nationwide implementation of interoperable health information technology in both the

public and private health care sectors." *Id*.

17.      Under the Executive Order, "[t]he National Coordinator shall, to the extent

permitted by law, develop, maintain, and direct the implementation of a strategic plan to guide the nationwide implementation of interoperable health information in both the public and private health care sectors that will reduce medical errors, improve quality, and produce greater value for health care expenditures." *Id.* at pg. 703 (*Section 3, Responsibilities of the National Health Information Technology Coordinator*).

18.     In 2009, Congress codified the National Coordinator position through the Health Information Technology for Economic and Clinical Health Act of 2009 (HITECH Act), *see* 123 Stat. 115, 230 (2009): "There is established within the Department of Health and Human Services an Office of the National Coordinator for Health Information Technology (referred to in this section as the 'Office'). The Office shall be headed by a National Coordinator who shall be appointed by the Secretary and shall report directly to the Secretary." 42 U.S.C. § 300jj-11(a) (Office of the National Coordinator for Health Information Technology).

19.     Congress tasked the National Coordinator with certain federal duties through the HITECH Act, *see* 42 U.S.C. § 300jj-11(c)(1) ("Duties of the National Coordinator"), including to "update the Federal Health IT Strategic Plan (developed as of June 3, 2008) to include specific objectives, milestones, and metrics with respect to the following: (i) The electronic exchange and use of health information and the enterprise integration of such information." 42 U.S.C. § 300jj-11(3)(A).

20.     The HITECH Act further required, as a duty for the National Coordinator, "Collaboration": "The strategic plan shall be updated through collaboration of public and private entities." 42 U.S.C. § 300jj-11(3)(B).

21.    From the outset, a core tenet of this federal health information technology initiative was for individuals to have access to their health care records online. *See* TOMMY G. THOMPSON & DAVID J. BRAILER, MD, PHD, *The Decade of Health Information Technology: Delivering Consumer-centric and Information-rich Health Care*, at pg. e (July 21, 2004) (discussing a "Medicare beneficiary portal"); *id.* at Attachment 1, Off. of Personnel Mang't Rep. at 6-7 (July 2004) (discussing "MyAnthem," which "provides an easy way to help members gain more control over their health care benefits through secure access that's available at any time and from any place"); *id.* at Attachment 2, Veteran Affairs Rep., at 18 (July 15, 2004) (discussing "My HealtheVet – The Personal Health Record").

22.    To make this and other federal health information technology goals a reality, the HITECH Act allocated billions of dollars for the health care system to adopt and meaningfully use "certified health information technology." *See* 42 U.S.C. § 1395w-4(o) (Incentives for adoption and meaningful use of certified EHR technology).

23.    The following year, the Department of Health and Human Services implemented this Congressional enactment through the "Meaningful Use Program," which is now known as the Promoting Interoperability Program. *See* Vol. 75 Fed. Reg., No. 144, pg. 44314 (Jul. 28, 2010).

24.    The Meaningful Use Program mandated that participants provide their patients with the ability to "view, download, and transmit" their health information online. *See, e.g.*, 42 C.F.R. § 495.20(f)(12)(i)(B) (Objective) ("Beginning in 2014, provide patients with the ability to view online, download, and transmit information about a hospital admission.");

*id*. at (ii)(B) (Measure) (health care provider must attest that "more than 50 percent of all unique patients who are discharged from inpatient or emergency department of an eligible hospital or CAH have their information available online within 36 hours after discharge").

25.     Integris Health acted pursuant to the Meaningful Use Program in making the Integris Health Patient Portal available to Integris Health's patients online. As set forth above, the link to this patient portal is available at http://www.integrisandme.com/.

26.     Ongoing usage of the portal is necessary for Integris Health to meet the Meaningful Use Program criteria. Integris Health submits mandatory annual reports on its involvement in the Meaningful Use Program / Promoting Interoperability Program to the Center for Medicare and Medicaid Services (CMS) through the QualityNet Secure Portal, also known as QNet. These reports are made specifically to meet federal requirements and include submissions regarding the Integris Health patient portal and Integris Health's patients' use of the portal.

### III.    Doe's Oklahoma State Law Claims are "For or Relating to" the Integris Health Patient Portal.

27.      The next requirement for federal officer removal is a causal nexus between Integris Health's actions taken under federal law and Doe's claims. To meet this requirement, under the plain language of 28 U.S.C. § 1442(a)(91), Doe's claims must only be "for or relating to" Integris Health's actions taken under federal law. 28 U.S.C. § 1442(a)(1).

28.     "Circuits have consistently given this requirement a broad reading. . . ." *Moore v. Elec. Boat Corp.,* 25 F.4th 30, 35 (1st Cir. 2022). In fact, the "for or relating to" requirement under § 1442(a)(1) is liberally construed and constitutes a lower burden than even a "causal

connection." *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017) (overturning a district court that imposed a "strict causal connection" though "§ 1442(a)(1) requires [] only that the charged conduct *relate to* an act under color of federal office). Moreover, any single claim is independently sufficient to satisfy the "for or relating to" requirement under § 1442(a)(1); *see Moore*, 25 F.4th at 35 (citing *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 945 (7th Cir. 2020)).

29.     This statutory language is met here because Doe specifically claims that it is an alleged privacy violation under Oklahoma state law each time an individual utilizes Integris Health's publicly accessible website.

30.     Doe alleges that "[u]nder HIPAA, a healthcare provider may not disclose personally identifiable, non-public medical information (PHI) about a patient, a potential patient, or household member of a patient for marketing purposes without the patients' express written authorization." Ex. 1 at ¶ 99.

31.     Doe further alleges that "[g]uidance from the United States Department of Health and Human Services instructs healthcare providers that patient status alone is protected by HIPAA." *Id.* at ¶ 100; *see also id.* at ¶ 105 (claiming "where an individual seeks medical treatment" is considered PHI under the HIPAA privacy rule) (quoting U.S. Dep't of Health & Human Services, *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates* (Dec. 2, 2022)).

32.     As set forth above, the Integris Health Patient Portal is one of the alleged "Online Platforms" at issue in the Complaint. Ex. 1 at ¶ 36 ("Integris serves many of its patients via its Online Platforms, which it encourages patients to use to search for physicians, locate

healthcare facilities, learn about specific health conditions and treatment options, schedule appointments, pay bills, sign up for classes and events, and more."); *id.* at ¶ 5 ("Defendant encourages its patients to use its website, https://integrisok.com, (the 'Website') and its various web-based tools and services (collectively referred to as the 'Online Platforms'), which allow patients to search for physicians, locate healthcare facilities, learn about specific health conditions and treatment options, schedule appointments, pay bills, sign up for classes and events, and more.").

33.     Doe alleges that he relied on Integris Health's Online Platforms to communicate confidential patient information. *Id*. at ¶¶ 84-90.

34.     Further, Doe alleges that Integris Health "sends Facebook a detailed view of a user's path through [Integris Health's] website and the content the user views." *Id.* at ¶ 76.

35.     Moreover, Doe alleges that it is a breach of fiduciary duty (among other violations) each time an individual clicks on the Integris Health Patient Portal link.

36.     Doe alleges that his breach of fiduciary claim is based on the alleged disclosure of patient status in this manner: "Defendant breached the fiduciary duty that it owed to Plaintiff and the Class Members by . . . failing to protect, and intentionally disclosing, their Private Information." *Id.* at ¶ 188.

37.     The Private Information referred to by Doe includes his "confidential Personally Identifying Information ('PII') and/or Protected Health Information ('PHI') (collectively referred to as 'Private Information')." *Id*. at ¶ 1.

38.     Doe alleges that "'[p]rotected health information' is defined as individually identifiable information relating to the past, present, or future health status of an individual

that is created, collected, or transmitted, or maintained by a HIPAA-covered entity in relation to the provision of healthcare, payment for healthcare services, or use in healthcare operations." *Id*. at fn. 2.

39.     Specifically, Doe alleges that this includes information "*such as an indication that the individual was treated at a certain clinic*." *Id*. at ¶ 101 (emphasis added); *see also id.* ¶ 100 (claiming "[g]uidance from the United States Department of Health and Human Services instructs healthcare providers that *patient status alone* is protected by HIPAA." (emphasis added)).

40.     In sum, through his allegations, Doe alleges that Integris Health's publicly available Website and online patient portal repeatedly violate his and the putative class members' privacy by violating HIPAA, giving rise to a breach of fiduciary duty (among other claims) under Oklahoma state law every time an individual clicks on Integris Health's Website and attempts to access its Online patient portal.

41.     For these reasons, Doe's claims meet the statutory requirement of being "for or related to" Integris Health's alleged actions taken under color of federal law.

**IV.     Integris Health Has Colorable Federal Defenses to Doe's Claims.**

42.     Integris Health has colorable federal defenses to Doe's claims.

43.     *First*, when an alleged and disputed federal duty forms the basis for plaintiff's alleged state law claims, then removal under 28 U.S.C. 1442(a)(1) is appropriate. *Jefferson Cty., Ala. v. Acker*, 527 U.S. 423, 431 (1999) (holding that "[u]nder the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends upon federal

11

law"). In this case, Plaintiff's Complaint relies on a purported interpretation of HIPAA as the basis for several of his causes of action. Ex. 1 at ¶¶ 99-106. As the Supreme Court held in *Mesa v. California*, "To assert that a federal statute does *not* impose certain obligations whose alleged existence forms the basis of a civil suit is to rely on the statute in just the same way as asserting that the statute *does* impose other obligations that may shield the federal officer against civil suits." *Mesa v. California*, 489 U.S. at 130 (emphasis in original). "Both are equally defensive and equally based in federal law." *Id*.

44.     Here, Integris Health will argue that the specific information allegedly disclosed (i.e., IP addresses and other web metadata) is outside of the purview of protected health information as defined by HIPAA. *See Kurowski v. Rush System for Health*, 2023 WL 4707184, at *3-4 (N.D. Ill. July 24, 2023) (holding that "[t]he interpretation of [individually identifiable health information] offered by HHS in its guidance goes well beyond the meaning of what the statute can bear"). The Northern District of California has already held as such in an analogous case against numerous health care providers challenging alleged disclosures on the Internet through routine website traffic. *See Smith v. Facebook*, 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017). This defense turns on an interpretation of federal law and on its own is sufficient to satisfy this element's low bar.

45.     *Second*, Integris Health has a preemption defense to Doe's Oklahoma state law claims. Federal law preempts state action "either by express provision, by implication, or by a conflict between federal and state law." *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995); *see also Murphy v. Nat'l Coll. Ath. Ass'n*, 138 S. Ct. 1461, 1480 (2018) (discussing preemption doctrines).

46.    A defendant therefore cannot be held liable under a given state law for doing precisely what the federal government wants it to do—as applied here, not only making an online portal readily available to patients, but also promoting the meaningful use of that portal. *See, e.g., Boggs v. Boggs*, 520 U.S. 833, 844 (1997) ("Conventional conflict pre-emption principles require pre-emption where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.").

47.    *Third,* the First Amendment will be a defense to Doe's alleged causes of actions because in *IMS Health Co. v. Sorrell*, 564 U.S. 552 (2011), the Supreme Court held that "the creation and dissemination of information are speech within the meaning of the First Amendment." *Id*. at 570. Doe's entire Complaint challenges how Integris Health allegedly uses its website analytical tools to enhance Integris Health's ability to speak to the public, including through the creation and dissemination of information. Ex. 1 at ¶¶ 15, 36, 38, 58.

48.    The Supreme Court has emphasized the fundamental need of maintaining the First Amendment's protection of speech on the internet: "While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace—the 'vast democratic forums of the Internet' in general, and social media in particular." *Packingham v. North Carolina*, 582 U.S. 98, 104 (2017) (quoting *Reno v. Am. Civil Libs. Union*, 521 U.S. 844, 868 (1997)).

## PROCEDURAL REQUIREMENTS FOR REMOVAL

49.    Integris Health satisfies all of the procedural requirements under 28 U.S.C. § 1446.

50.    Integris Health was served on July 17, 2023 and is filing this notice of removal

within thirty days of its receipt of the Complaint by service pursuant to 28 U.S.C. § 1446; *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999).

51.    Integris Health files this notice of removal in the United States District Court of the Western District of Oklahoma because the state court in which the action is pending, the District Court of Oklahoma County, State of Oklahoma, is located within this federal judicial district.

52.    The removal notice is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

53.    Integris Health has attached a copy of the all process, pleadings, and orders served upon Integris Health and/or filed in the the District Court of Oklahoma County prior to removal as Exs. 1-4. Pursuant to Local Rule 81.2(a), a copy of the OCSN Docket Sheet for Case No. CJ-2023-3801 in the District Court of Oklahoma County is attached as Ex. 5. L.R. Civ. P. 81.2(a).

54.    Upon filing this Notice of Removal, Integris Health will promptly "give written notice thereof to all adverse parties," and will "file a copy of the notice with the clerk" of the District Court of Oklahoma County, State of Oklahoma.

## CONCLUSION

Doe's Complaint directly challenges practices and procedures Integris Health has taken acting under color of federal law, and this case is therefore removable to this Court under 28 U.S.C. § 1442(a)(1).

Dated: August 16, 2023

Respectfully submitted,

By: */s/ Larry D. Ottaway*
*Counsel for Defendant Integris Health*

Larry D. Ottaway – OBA # 6816
**FOLIART, HUFF, OTTAWAY &
BOTTOM**
201 Robert S. Kerr, Ste. 1200
Oklahoma City, OK 73102
Telephone: (405) 232-4633
Facsimile: (405) 232-3462
*larryottaway@OklahomaCounsel.com*

Paul G. Karlsgodt*
Jonathan S. Maddalone*
**BAKER & HOSTETLER LLP**
1801 California Street, Ste. 4400
Denver, CO 80202
Telephone: (303) 861-0600
Facsimile: (303) 861-7805
*pkarlsgodt@bakerlaw.com*
*jmaddalone@bakerlaw.com*

Lisa A. Houssiere*
**BAKER & HOSTETLER LLP**
811 Main Street, Ste. 1100
Houston, TX 77002
Telephone: (713) 751-1600
Facsimile: (713) 751-1717
*lhoussiere@bakerlaw.com*

D. Colby Orton*
**BAKER & HOSTETLER LLP**
127 Public Square, Suite 2000
Cleveland, OH 44106-1214
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
*dorton@bakerlaw.com*

*\* (pro hac vice forthcoming)*

*Counsel for Defendant Integris Health*

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2023, I electronically transmitted Notice of Removal to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF Registrants:

I hereby certify that on August 16, 2023, I served the same document via email on the following who are not registered participants of the ECF System:

Paul G. Karlsgodt
**BAKER & HOSTETLER LLP**
1801 California Street, Ste. 4400
Denver, CO 80202
Telephone: (303) 861-0600
Facsimile: (303) 861-7805
*pkarlsgodt@bakerlaw.com*

Lisa A. Houssiere
**BAKER & HOSTETLER LLP**
811 Main Street, Ste. 1100
Houston, TX 77002
Telephone: (713) 751-1600
Facsimile: (713) 751-1717
*lhoussiere@bakerlaw.com*

Jonathan S. Maddalone
**BAKER & HOSTETLER LLP**
1801 California Street, Ste. 4400
Denver, CO 80202
Telephone: (303) 861-0600
Facsimile (303) 861-7805
*jmaddalone@bakerlaw.com*

D. Colby Orton
**BAKER & HOSTETLER LLP**
127 Public Square, Suite 2000
Cleveland, OH 44106-1214
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
*dorton@bakerlaw.com*

*Counsel for Defendant Integris Health*

16

Lynn A Toops
Mary Kate Dugan
**COHEN & MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46205
Telephone: (317) 636 – 6481
*ltroops@cohenandmalad.com*
*mdugan@cohenandmalad.com*

J. Gerard Stranch, IV
Andrew E. Mize*
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks. Ave., Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254 - 8801
Facsimile: (615) 225 - 5419
*gstranch@stranchlaw.com*
*amize@stranchlaw.com*

Samuel J. Strauss
Raina Borelli
**TURKE & STRAUSS, LLP**
613 Williamson St., Suite 201
Madison, Wisconsin 53703
Telephone: (608) 237-1775
Facsimile: (608) 509 - 4423
*sam@turkestrauss.com*
*raina@turkestrauss.com*

*Attorneys for Plaintiffs*

*/s/ Larry D. Ottaway*